IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| KEMAL HAMEED, *on behalf of himself and all similarly situated individuals*, 910 Busters Ln. Owings, MD 20736 | : : : : | |
| Plaintiff, | : : | Civil Action No. 8:22-cv-2415 |
| v. | : : : | |
| COURT RECORD SEARCHES, INC., 6277-600 Carolina Commons Drive #306 Indian Land, SC 29707 | : : : : : | |
| Defendant. | : : | |

## CLASS ACTION COMPLAINT

Plaintiff Kemal Hameed, by counsel, *on behalf of himself and all similarly situated individuals*, brings the following Complaint against Court Record Searches, Inc. ("CRS"). In support of his Complaint, Plaintiff alleges as follows:

### INTRODUCTION

1. When enacting the Fair Credit Reporting Act ("FCRA"), Congress found that consumer reporting agencies "have assumed a vital role in assembling and evaluating . . . information on consumers." 15 U.S.C. § 1681(a)(3). Thus, Congress saw a need to ensure that consumer reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Id.* § 1681(a)(4). To accomplish Congress' goal, the FCRA contains several requirements to protect consumers, including § 1681c, which is one of the statute's cornerstone provisions.

2.     Absent several narrow exceptions, § 1681c prohibits consumer reporting agencies from reporting adverse items of information that antedate the report by more than seven years. This provision "reflects a policy choice to allow dated adverse credit data to 'age off' a credit report because such information might otherwise indefinitely hamper the borrowing capabilities of now-reformed individuals." *Beseke v. Equifax Info. Servs. LLC*, No. CV 17-4971, 2019 WL 6250756, at *3 (D. Minn. Nov. 22, 2019) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 863 (3d Cir. 2014)), *motion to certify appeal denied*, No. CV 17-4971, 2020 WL 133289 (D. Minn. Jan. 13, 2020). To strengthen the protections of § 1681c, the FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

3.     Pertinent to this lawsuit, the FCRA prohibits the reporting of arrest records that predate the report by more than seven years or until the governing statute of limitations has expired (whichever is longer). 15 U.S.C. § 1681c(a)(2). The statute also requires removal of most adverse information, other than criminal convictions, to be removed after seven years. 15 U.S.C. § 1681c(a)(5). Despite this clear requirement, CRS fails to properly remove outdated arrest and non-conviction criminal information from reports it sells about consumers to potential employers. In this case, CRS provided Plaintiff's potential employer with an extradition record from 2014, suggesting that he was arrested in Washington, D.C. and later extradited to another jurisdiction.

4.     To be clear, Plaintiff has never been charged with or convicted of any crime in Washington, D.C. In any event, CSR unlawfully reported the 2014 extradition record in Plaintiff's 2022 criminal background report—eight years after the underlying event purportedly took place.

5.     By systematically allowing arrests and extradition records to be reported indefinitely—even with no conviction—CRS violates the FCRA, including its requirement that

agencies "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

6.     Because this reporting appears to result from CRS's standard reporting procedures and harmed the subject of CRS's background reports in the same way, this case is capable of and appropriate for class resolution.

7.     CRS also listed this record as responsive to a search for felony and misdemeanor records and listed a "sentence" associated with the record. This reporting was materially misleading because the record was neither a felony nor a misdemeanor, and no sentence associated with the record was imposed. In other words, notwithstanding its other inaccuracies, CRS's reporting made Plaintiff's record look significantly more serious than it actually was.

8.     As a result, Plaintiff also alleges an individual claim against CSR under 15 U.S.C. § 1681e(b).

## JURISDICTION

9.     The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this judicial district and division, and Plaintiff resides here.

## PARTIES

11.    Plaintiff is a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

12.    Defendant CRS is a South Carolina corporation doing business throughout the United States, including in Maryland. Its principal place of business is located at 6277-600 Carolina Commons Drive #306, Indian Land, South Carolina 29707.

13. CRS is a consumer reporting agency under 15 U.S.C. § 1681a(f) because, for monetary fees, it regularly assembles or evaluates consumer credit or other consumer information to furnish consumer reports for employment purposes to third parties, and uses interstate commerce, including the internet, to prepare and furnish these consumer reports.

14. CRS sells consumer reports, also called background reports, and credit reports, to employers to use in deciding whether to hire to a prospective employee. These reports include the prospective employee's criminal history.

## FACTS

*CRS's Business Practices*

15. Despite only being incorporated in South Carolina in 2018, CRS claims that it has over 20 years of experience of "talent and expertise" in the criminal background check industry.[1]

16. Upon information and belief, CRS processes tens of thousands of employment background reports each year.

17. It claims to understand the pressure faced by companies to hire qualified employees and claims to help employers complete their required "due diligence" in the hiring process by offering a variety of searches, including criminal records searches, driving record searches, employment verifications, and credit checks.[2]

---

[1] http://courtrecordsearches.com/AboutUs.php (last visited Sept. 15, 2022).

[2] http://courtrecordsearches.com/index.php (last visited Sept. 15, 2022); http://courtrecordsearches.com/Services_TypesofSearches.php (last visited Sept. 15, 2022).

18. CRS also boasts that it can provide its services for as little as $3 per report, as well as more in-depth reports, but that its prices are generally lower than its competitors by 20 to 50 percent.[3]

19. Upon information and belief, discovery will show that CRS is able to offer these low prices by purchasing criminal information from various vendors and compiling them into a single database for when a background check is ordered. When the background check is then completed, no human is involved in the compiling, matching, and reporting of criminal record data.

20. Nor does CRS have a procedure in place to remove arrest information or other criminal case information that did not result in a conviction after seven years have passed.

*Mr. Hameed's Experience*

21. In December 2021, Plaintiff applied for a Cultivation Technician position with PharmaCann, Inc.

22. As part of the application process, Plaintiff understood he had to undergo a background check by the FBI and the Maryland Medical Cannabis Commission.

23. Additionally, PharmaCann ordered Plaintiff's background report from CRS on or around January 19, 2022.

24. CRS provided Plaintiff's background report to PharmaCann on or about January 19, 2022.

25. The report that CRS provided to PharmaCann about Plaintiff was inaccurate, incomplete, and misleading.

---

[3] http://courtrecordsearches.com/AboutUs.php (last visited Sept. 15, 2022).

Case 8:22-cv-02415-TJS   Document 1   Filed 09/22/22   Page 6 of 15

26.     Most notably, the report returned a record from the District of Columbia Superior Court that CRS reported about Plaintiff. The information listed:

```
Search Type:      Felony and Misdemeanor, 7 Years

COURT:            District of Columbia - Court System
CASE NUMBER:      2014 FUG 000480    Unknown
DATE OF OFFENSE:  01/08/14
FILING DATE:      01/08/14
CHARGE(S):        FUGITIVE FROM JUSTICE
DISPOSITION DATE: 01/13/14
DISPOSITION:      Closed-Extradition Waived Defendant Picked Up
                  Status - Closed
SENTENCE:         Action - Fugitive from Justice
                  01/08/2014 01:00 PM - Courtroom C-10 - Arraignment -
                  Extradition Hearing Waived
                  01/14/2014 01:00 PM - Courtroom C-10 - Status Hearing -
                  Defendant Returned to Demanding State
                  01/13/2014 - Case Disposed Deft. Picked Up
IDENTIFIERS ON
  RECORD FILE:    NAME ON RECORD: HAMEED, KEMAL M
                  DOB ON RECORD:
---------------------------
```

27.     This record never should have been reported to PharmaCann.

28.     Plaintiff was arrested in 2014 for failing to appear at an out-of-state domestic relations court event, but he was never charged or convicted of a crime in Washington, D.C. Instead, this record merely reflected an arrest for failing to appear in another jurisdiction, which was immediately resolved upon his subsequent appearance.

29.     Further, this record was expunged by the Commonwealth of Pennsylvania prior to 2018, and no longer available to the public.

30.     A cursory review of the record reported to PharmaCann makes it clear that no conviction occurred. For example: the disposition field indicates "Closed-Extradition Waived Defendant Picked Up"; the filing date is the same date as the disposition date; the "sentence" reflects that Plaintiff was "returned to demanding state"; and there is no conviction or plea anywhere to reflect that a conviction occurred.

31.     Despite these discrepancies, CRS included the information in Plaintiff's background report and reported it to his potential employer.

32. Since there was no criminal charge or outstanding arrest, there would be no applicable statute of limitations for his failure to appear for a court date in another state.

33. As a result, CRS was not allowed to report this outdated arrest record because it was more than seven years old.

34. In addition, CRS's reporting of this outdated record was incomplete and materially misleading because it suggested that Plaintiff's arrest record involved a far more serious crime. For example, it was listed as responsive to a search for felonies and misdemeanors. CRS also reported a "sentence" for the record, even though Plaintiff was not convicted of any crime or "sentenced" to any jail time or fine.

35. CRS knew or should have known that its reporting was materially misleading because it was clear that Plaintiff was never charged with or convicted of a felony or misdemeanor in Washington, D.C.

36. PharmaCann asked Plaintiff about the arrest record during his interview, which Plaintiff declined to discuss because the underlying record was expunged. Plaintiff's refusal to explain the record contributed in a significant way to the recission of the job offer for the position at PharmaCann.

37. Had CRS not reported the obsolete record about Plaintiff to PharmaCann, he believes he would have received the job as a Cultivation Technician.

38. In addition to the loss of employment, Plaintiff also suffered embarrassment, reputational damage, and emotional distress because of CRS's inaccurate reporting.

39. CRS's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. For example, CRS's conduct was accomplished through its intended procedures; these procedures have continued despite court decisions and consumer

complaints critical of similar conduct; and CRS will continue this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than accurate ones.

40. CRS takes no action to determine whether the records older than seven years it reports are criminal convictions or not before publishing background reports to its customers. This failure is unreasonable and willful.

41. If CRS had reasonable procedures to ensure that the information it published about prospective employees to its customers was as accurate as possible and not obsolete, it would not have included an arrest that never resulted in a conviction on Plaintiff's report.

42. CRS understands the FCRA's requirement that the information it reports about prospective employees be as accurate as possible and that its failure to have procedures in place to remove obsolete arrest information violates the FCRA. CRS knew or had reason to know that its conduct conflicted with FTC and CFPB guidance, case law, and the plain language of the FCRA.

### COUNT I – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c(a)
### Class Claim

43. Plaintiff restates the preceding allegations.

44. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class:

> All natural persons residing in the United States (a) who were the subject of a report sold by CRS; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which identified the applicant has having an arrest record; (d) which did not result in a conviction; (e) that predated the report by seven years or was reported after the applicable statute of limitations.
>
> Excluded from the class definitions are any employees, officers, directors of CRS, any attorney appearing in this case, and any judge assigned to hear this action.

45. **Numerosity.** Fed. R. Civ. P 23(a)(1). Plaintiff estimates that the classes are so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by CRS and the class members may be notified of the pendency of this action by published, mailed notice, or both.

46. **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether CRS needed to remove arrest records that did not result in a conviction after seven years; (2) whether CRS's conduct violated the FCRA; and (3) whether CRS's conduct was willful.

47. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

48. **Adequacy of Representation.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

49. **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by CRS's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

50. In the alternative, Plaintiff could seek an issue-only certification under Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4) as to CRS's liability and willfulness, and leave the damages issue for individual determination.

51. CRS's conduct violated § 1681c(a) of the FCRA as to Plaintiff and each putative class member by reporting each consumer's arrest records for longer than the seven-year period or until the governing statute of limitations had expired as permitted by the FCRA.

52. Plaintiffs and each putative class member suffered real and actual harm and injury.

53. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in CRS's files and reports.

54. Here, each class member's background report contained derogatory information that CRS was legally obligated to remove.

55. CRS's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering CRS liable under 15 U.S.C. § 1681o.[4]

56. Because of these FCRA violations, CRS is liable to Plaintiff and each class member for statutory damages from $100.00 to $1,000.00, as well as punitive damages, attorneys' fees, and costs under 15 U.S.C. § 1681n.

### COUNT II – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(a)
### Class Claim

57. Plaintiff restates the preceding allegations.

58. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action for violations of Section 1681e(a) for the same class identified above.

59. **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the classes are so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by CRS and the class members may be notified of the pendency of this action by published, mailed notice, or both.

60. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether CRS had in place reasonable procedures designed to avoid violations of 15

---

[4] Plaintiff seeks statutory and punitive damages on behalf of himself and the putative class members. If class certification is denied, Plaintiff intends to seek actual damages for CRS's violation.

U.S.C. § 1681c(a); (2) whether CRS's conduct violated the FCRA; and (3) whether CRS's conduct was willful.

61. **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

62. **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with his counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with his vigorous pursuit of this action.

63. **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by CRS's conduct. By contrast, the class-action device will result in substantial benefits to the

litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

64. In the alternative, Plaintiff could seek an issue-only certification under Federal Rules of Civil Procedure 23(b)(3) and 23(c)(4) as to CRS's liability and willfulness, and leave the damages issue for individual determination.

65. As described above, CRS failed to remove arrest record information that did not result in a conviction that antedated the report by more than 7 years.

66. CRS violated § 1681e(a) of the FCRA as to Plaintiff and each putative class member because it had no procedures in place designed to prevent the reporting of arrest record that predated by seven years or until the governing statute of limitations had expired as permitted by the FCRA.

67. Plaintiffs and each putative class member suffered real and actual harm and injury.

68. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in CRS's files and reports.

69. Class members were also falsely painted as unsuitable employees to their prospective employers.

70. CRS's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering CRS liable under 15 U.S.C. § 1681o.[5]

---

[5] Plaintiff seeks statutory and punitive damages on behalf of himself and the putative class members. If class certification is denied, Plaintiff intends to seek actual damages for CRS's violation.

71. Because of these FCRA violations, CRS is liable to Plaintiff and each class member for statutory damages from $100.00 to $1,000.00, as well as punitive damages, attorneys' fees, and costs under 15 U.S.C. § 1681n.

### COUNT III – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Individual Claim

72. Plaintiff restates the preceding allegations.

73. CRS violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained.

74. Specifically, CRS reported Plaintiff's arrest record under the heading of "Felony and Misdemeanor Search" and reported a "sentence" associated with the record.

75. This made it appear that Plaintiff had been convicted of a felony or misdemeanor instead of merely arrested, with no criminal conviction or criminal sentence imposed.

76. This reported was materially misleading and therefore violated § 1681e(b) of the FCRA.

77. As a result of CRS's conduct, Plaintiff suffered concrete and particularized harm, including without limitation: denial of his employment application, damage to reputation, embarrassment, humiliation, and other emotional distress.

78. CRS's conduct in violating § 1681e(b) was willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, it was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, on behalf of himself and the putative class members, moves for class certification and for statutory and punitive damages, as well as his attorneys' fees and costs

against CRS; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court considers appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**KEMAL HAMEED**

By: /s/ *Kristi C. Kelly*
Kristi Cahoon Kelly, Bar No. 07244
J. Patrick McNichol, Bar No. 19034
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Phone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyguzzo.com
Email: pat@kellyguzzo.com

*Counsel for Plaintiff*